THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>$30,800.00 IN UNITED STATES CURRENCY,<br><br>    Defendant *In Rem*,<br><br>    v.<br><br>ESTEBAN PEÑA-NUÑEZ,<br><br>    Claimant. | Civil No. 21-1527 (ADC) |

**OPINION AND ORDER**

Pending before the Court is the United States of America's ("Government") motion to strike Esteban Peña-Núñez's ("claimant") verified claim and counterclaim, filed on July 26, 2022. **ECF No. 11**. Claimant filed an opposition on August 11, 2022. **ECF No. 13**. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's motion.

**I.**      **Background**

On November 3, 2021, the Government filed a verified complaint under 18 U.S.C. §§ 1956(a)(1)(B)(i), 981(a)(1)(A) and 982(a)(1), as well as 21 U.S.C. §§ 841(a)(1) and 881(a)(6), seeking forfeiture of $30,800.00 in U.S. currency. **ECF No. 1**. The Government attached an unsworn declaration under penalty of perjury subscribed by Special Agent Michael Calegari of the Drug

Enforcement Administration ("DEA") providing the factual basis for the verified complaint. **ECF No. 1-1**. In the declaration, DEA Special Agent Calegari described in detail the events that lead agents to search the claimant's luggage upon his arrival to Luis Muñoz Marín International Airport in Puerto Rico on May 14, 2021. In short, the agents discovered and seized $30,800.00 from claimant asserting that the monies constituted the proceeds of illegal drug trafficking and money laundering schemes. *Id.*, at 3-6.

On April 13, 2022, the Government re-filed the verified complaint to include a page that was apparently omitted from the original filing. **ECF No. 5**.[1] The Government did not re-file the DEA agent's unsworn declaration, but again incorporated the same, by reference, in its amended complaint. *Id.*, at 3.

On May 6, 2022, claimant filed a verified claim through his attorney, in which he stated as follows:

> Claimant, Esteban Pe[ñ]a Nu[ñ]ez, makes a claim on behalf of himself to the property in the verified complaint as follows: $30,800.00 in United States currency and in support of such claim avers that he has a proprietary interest in the aforementioned property under the laws of the Commonwealth of Puerto Rico.

**ECF No. 6-1**.

On May 18, 2022, the Court issued a warrant of arrest *in rem* for the $30,800.00 pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). **ECF No. 9**. The next day, on May 19, 2022, claimant

---

[1] The initial verified complaint was deficient, as it failed to include jurisdictional and venue statements, as well as a description of the defendant *in rem*. The Government cured these deficiencies in the amended verified complaint.

filed an answer to the amended verified complaint, whereby he denied the facts presented in the DEA agent's unsworn declaration "with the exception of having the amount of $30,800.00 seized from the claimant by agents." **ECF No. 10**, at 2. Claimant also presented several affirmative defenses, including insufficient process, as he contends that he was "served with an incomplete complaint on/or about [April 7, 2022], after [it] having been filed on [November 3, 2021]." *Id.* Claimant also raised several other defenses, some of which appear to partially contest the version of events propounded by the Government. *See, id.*, at 3 ("Claimant was coerced into opening his suitcase, no detection having actually been made by a Canine…."). Finally, claimant included a "counterclaim" against the Government for the amount of $100,000.00 due to the DEA agents' alleged "arbitrary[] racial[] profiling" during their interdiction of claimant at the airport. *Id.*

On July 26, 2022, the Government filed a motion to strike claimant's verified claim and his counterclaim. **ECF No. 11**. As to the verified claim, the Government argued that claimant failed to establish his statutory standing to contest the forfeiture complaint because he did not adequately establish ownership of the seized property and therefore failed to perfect his claim under Supplemental Rule G(5)(a)(i). *Id.*, at 3-5. As to the counterclaim, the Government alleged that claimant cannot assert a claim against the Government in this *in rem* proceeding. *Id.*, at 6-7. It also raised the argument that sovereign immunity bars the counterclaim; more specifically that claimant failed to meet his burden of identifying a statute through which the Government waived its sovereign immunity to suits such as his. *Id.*, at 7-8.

Claimant filed a response in opposition on August 11, 2022. **ECF No. 13**. He argued that his verified claim is compliant with Supplemental Rule G(5)(a)(i) and relies on his own statements made during the May 14, 2021 search and included in the DEA agent's unsworn declaration incorporated to the verified complaint. *Id.*, at 2. The claimant also refers to, and attached a copy of, an administrative non-judicial claim made through the U.S. Department of Justice on August 15, 2021, to allege that the Government had prior notice of claimant's ownership interest. **ECF No. 13-1**. Finally, out of an abundance of caution, claimant submitted an amended verified complaint which incorporates the following language: "The property claimed is $30,800.00 in United States currency, this money being mine as substantiated in the administrative claim filed with the DEA, which gave rise to this proceeding. This money is the product of my labor, unemployment benefits provided, and money given to me by my consensual partner." **ECF No. 13-4**. Claimant remained silent as to whether his counterclaim was barred by the Government's sovereign immunity.

## II. Legal Standard

### A. Civil Forfeiture Actions

Civil forfeiture actions are generally governed by 18 U.S.C. § 983 and Rule G of the Supplemental Rules. Section 983 provides detailed procedures for the filing of both judicial and non-judicial forfeiture claims. As to the former, it specifically requires that the Government "file a complaint for forfeiture in the manner set forth in the Supplemental Rules…." 18 USC § 983(a)(3)(A). Supplemental Rule G(2) supplies the requirements for such complaints:

> The complaint must:
>   (a) be verified;
>   (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
>   (c) describe the property with reasonable particularity;
>   (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
>   (e) identify the statute under which the forfeiture action is brought; and
>   (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supplemental Rule G(2).

On the other hand, section 893 also provides for the filing of judicial claims by third parties against the forfeiture complaint: "In any case in which the Government files… a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules…." 18 U.S.C. § 983(a)(4)(A). Moreover, the statute requires that "[a] person asserting an interest in seized property… file an answer to the Government's complaint for forfeiture…." 18 U.S.C. § 983(a)(4)(B).

Supplemental Rule G provides the requirements for a valid claim:

> The claim must:
>   (A) Identify the specific property claimed;
>   (B) Identify the claimant and state the claimant's interest in the property;
>   (C) Be signed by the claimant under penalty of perjury; and
>   (D) Be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

Supplemental Rule G(5)(a)(i). And as to the contents of the answer, the Rule simply requires that the answer be filed and served within 21 days after filing the claim. Supplemental Rule G(5)(b).

In proceedings under Supplemental Rule G, the Government "may move to strike a claim or answer [] for failing to comply with Rule G(5) or (6), or [] because the claimant lacks standing." Supplemental Rule G(8)(c)(i). In deciding a motion to strike a claim, the Court "should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects" under Fed. R. Civ. P. 15. *See,* Advisory Committee Notes to Supplemental Rule G, Subdivision (1).

### B.     Standing in Civil Forfeiture Actions

"Standing is a threshold question in civil forfeiture cases." *United States v. Letter from Alexander Hamilton to Marquis de Lafayette Dated July 21, 1780*, 15 F.4th 515, 520 (1st Cir. 2021), *cert. denied sub nom. Boss v. United States*, 142 S. Ct. 1230 (2022) (*citing United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003)). A claimant must demonstrate that he or she possesses both statutory and constitutional standing. *Id.,* at 521. Statutory standing is met "through compliance with the procedures and deadlines for filing a claim set out in Supplemental Rule G." *Id.* Constitutional standing is met by demonstrating "a legal ownership or possessory interest that would support an injury in fact." *Id.* "At the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices." *One-Sixth Share*, 326 F.3d at 41.Cir. 2003). Thus, "[a]n allegation of ownership, coupled with some evidence of ownership, is sufficient to establish constitutional standing to contest a forfeiture." *United States v. $8,440,190.00 in U.S. Currency*,

719 F.3d 49, 58 (1st Cir. 2013) (*citing United States v. U.S. Currency, $81,000*, 189 F.3d 28, 35 (1st Cir. 1999)).

### C.  Amendments to Pleadings in Civil Forfeiture Proceedings

Rule G of the Supplemental Rules provides for the application of Supplemental Rules C and E, or the Federal Rules of Civil Procedure in civil forfeiture actions *in rem* "to the extent that this rule does not address an issue." Supplemental Rule G(1). Neither Supplemental Rules G, C nor E address pleading amendments. Therefore, Fed. R. Civ. P. 15 governs the manner in which a pleading may be amended in a proceeding under Supplemental Rule G. *See*, Advisory Committee Notes to Supplemental Rule G, Subdivision (1) ("Rule G, for example, does not address pleadings amendments. Civil Rule 15 applies, in light of the circumstances of a forfeiture action.").

Under Fed. R. Civ. P. 15, leave to amend a pleading should be freely granted where "justice so requires." Fed. R. Civ. P. 15(a)(2); *Nikitine v. Wilmington Trust Co.*, 715 F.3d 388, 390 (1st Cir. 2013). However, where "the request is characterized by undue delay, bad faith, futility, or the absence of due diligence on the movant's part," the Court may deny leave to amend. *Nikitine*, 715 F.3d at 390 (citations omitted). The Court must consider the totality of the circumstances. *Id.*

### D.  Counterclaims in Civil Forfeiture Proceedings

Supplemental Rule G does not contain a provision governing the filing and prosecution of counterclaims in an *in rem* civil forfeiture proceeding. Seemingly, neither do Supplemental

Rules C or E. However, Fed. R. Civ. P. 13 allows the filing of counterclaims "against an opposing party if the claim [] arises out of the transaction or occurrence that is the subject matter of the opposing party's claim…." Fed. R. Civ. P. 13(a)(1)(A). As relevant to cases where the Government is a party, the Rule cautions that "[t]hese rules do not expand the right to assert a counterclaim—or to claim a credit—against the United States or a United States officer or agency." Fed. R. Civ. P. 13(d).

In *U.S. v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30 (1st Cir. 1991), the First Circuit upheld a decision by a district court to disregard a claimant's counterclaim asserted in an *in rem* civil forfeiture proceeding, reasoning as follows:

> By definition, a counterclaim is a turn-the-tables response directed by one party ("A") at another party ("B") in circumstances where "B" has earlier lodged a claim in the same proceeding against "A." A forfeiture action is *in rem,* not *in personam.* The property is the defendant. Since no civil claim was filed by the government against Castiello—indeed, rather than being dragooned into the case as a *defendant,* he intervened as a *claimant*—there was no "claim" to "counter." Thus, Castiello's self-styled counterclaim was a nullity, and the court below appropriately ignored it.

*United States v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30, 34 (1st Cir. 1991) (emphasis in original). The Sixth Circuit, citing *One Lot of U.S. Currency ($68,000)*, has adopted the same posture:

> A forfeiture action is a suit *in rem* against the *res*, or the seized property, the purpose of which is to determine "ownership and control" over that property. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 52, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). In other words, a claim in a civil-forfeiture action is "brought against property, not people." *United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 Banco Español de Crédito Spain*, 295 F.3d 23, 25 (D.C. Cir. 2002). And while the purported owner of the property may intervene

in the action, he may not assert counterclaims against the United States. *United States v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30, 34 (1st Cir. 1991).

*Zappone v. United States*, 870 F.3d 551, 561 (6th Cir. 2017). In addition, several other district courts have followed this reasoning. *See, e.g., U.S. v. 8 Luxury Vehicles*, 88 F.Supp.3d 1332 (M.D. Flo. Feb. 26, 2015); *United States v. Funds from Fifth Third Bank Acct.*, No. 13-11728, 2013 WL 5914101 (E.D. Mich. Nov. 4, 2013); *United States v. $22,832.00 in U.S. Currency*, No. 1:12 CV 01987, 2013 WL 4012712 (N.D. Ohio Aug. 6, 2013); *United States v. 1866.75 Bd. Feet, 11 Doors And Casings, More of Less of Dipteryx Panamensis Imported from Nicaragua*, No. 1:07CV1100 (GBL), 2008 WL 839792 (E.D. Va. Mar. 25, 2008). [2]

## II. Discussion

### A. Government's Motion to Strike Claimant's Verified Claim

The Government challenges the sufficiency of claimant's verified claim based on his alleged failure to establish statutory standing. The Government's challenge relies entirely on the position that the verified claim propounds merely a "bald assertion of ownership or possession" insufficient under Supplemental Rule G(5). **ECF No. 11**, at 4 ("[Claimant's] bare statement that

---

[2] The Fifth Circuit recently declined to extend the categorical rejection of counterclaims in *in rem* civil forfeiture proceedings established in *One Lot of U.S. Currency ($68,000)*. *See, United States v. $4,480,466.16 in Funds Seized from Bank of America Acc. Ending in 2653*, 942 F.3d 655, 663 (5th Cir. 2019) ("In sum, we respectfully decline to adopt the reasoning in *$68,000* that, because 'the property is the defendant' in a forfeiture proceeding, a claimant with interests in that property may never file a counterclaim."). Notwithstanding, this Court is bound to follow the rule set out in *One Lot of U.S. Currency ($68,000)* and will not apply, or pass judgment on the merits of, a conflicting out-of-circuit rule, particularly where it has not been briefed by any party. *See, Eulitt ex rel. Eulitt v. Maine, Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority."); *see also, United States v. Lewis*, 517 F.3d 20, 24 (1st Cir. 2008)("The law of the circuit rule does not depend on whether courts outside the circuit march in absolute lock step with in-circuit precedent. Thus, the emergence of a minority view, without more, does not open an escape hatch….").

he has a proprietary interest in [the monies seized] with nothing more is insufficient to comply with the claim requirement, even if filed under oath.") and 5 ("In this case, [claimant] has yet to establish ownership and standing, as he has failed to file a proper claim, and his purported claim is a bald assertion of ownership with nothing more.").

The Government cites to several out-of-circuit cases in support of its position. *See*, **ECF No. 11** at 2-5 (citing six decisions from the Fifth, Sixth and Ninth Circuits and one decision from the U.S. District Court for Northern District of Georgia). The only in-circuit decision cited by the Government in this matter is that of the U.S. District Court for the District of Massachusetts in *United States v. $29,540.00 in U.S. Currency*, No. CIV.A. 11-12172-GAO, 2013 WL 783052 (D. Mass. Feb. 28, 2013), where the court struck a civil forfeiture claim based, among other things, on the claimant's failure to support his allegation of a possessory interest in the seized monies, his failure to sign his claim under oath, his failure to file an answer to the forfeiture complaint, and his failure to respond to the Government's special interrogatories served pursuant to Supplemental Rule G(6)(a). 2013 WL 783052 at *4-6. The claimant in that case also failed to appear for two status conferences. *Id.*, at *1.

Claimant, on the other hand, asserts that he has sufficiently alleged a colorable interest in the proceedings and relies on First Circuit precedent that demands the Court liberally interpret standing at the initial intervention stage. *See, e.g., United States v. $8,440,190.00*, 719 F.3d 49 (1st Cir. 2013); *United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of*

*Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36 (1st Cir. 2003); *United States v. U.S. Currency, $81,000*, 189 F.3d 28 (1st Cir. 1999).

The question thus presented by the Government's motion to strike boils down to whether claimant's verified claim, in order to establish his standing under Supplemental Rule G(5)(a)(i)(B), needed to include something more specific than the statement that he had "a proprietary interest under the laws of the Commonwealth of Puerto Rico." If looked at through the prism of the First Circuit's standard as regards to **constitutional** standing, this language may very well be, by itself, insufficient. *See, Letter from Alexander Hamilton*, 15 F.4th at 521 ("[claimants] must demonstrate constitutional standing through a legal ownership or possessory interest that would support an injury in fact."). In some cases, the First Circuit has held that such showing must include something beyond just a mere allegation of ownership. *See*, *$8,440,190.00 in U.S. Currency*, 719 F.3d at 56-57 ("An allegation of ownership, **coupled with some evidence of ownership**, is sufficient to establish constitutional standing to contest a forfeiture.") (emphasis added); *U.S. Currency, $81,000,* 189 F.3d at 35 ("[C]ourts have held that an allegation of ownership and **some evidence of ownership** are together sufficient to establish standing to contest a civil forfeiture.") (emphasis added).

However, the Government's challenge is strictly as to claimant's **statutory** standing, not his **constitutional** standing—that is, as to his compliance with the requirement of Supplemental Rule G(5)(a)(i)(B) that he "identify his interest in the property." *Compare*, *Letter from Alexander Hamilton*, 15 F.4th at 521 (defining statutory standing as "compliance with the procedures and

deadlines for filing a claim set out in Supplemental Rule G") *with* **ECF No.** 11, at 1 ("[Claimant's claim… fails to comply with the requirements and provisions of [Supplemental] Rule G(5)(a)(i)… so as to perfect a valid and procedurally sound claim. Consequently, [claimant] lacks standing…."), 3 ("[Claimant's] 'Verified Claim…' does not comply with [Supplemental] Rule G(5)(a)(i)(B)… which states that the claim 'must identify the claimant and state the claimant's interest in the property.'"), and 4 ("[Claimant's] bare statement that he has a proprietary interest in the currency with nothing more is insufficient to comply with the claim requirement, even if filed under oath."). Therefore, the Government's motion does not require that the Court resolve whether claimant has shown a sufficient constitutional interest in the seized property, but only whether he complied with Supplemental Rule G(5)'s filing requirements.

As relevant here, the Court notes that the First Circuit's precedent requiring "some evidence of ownership" is not entirely clear on whether this requirement is applicable to **statutory** standing challenges. *See, e.g., $8,440,190.00 in U.S. Currency*, 719 F.3d at 56-57 (applying such requirement to constitutional standing analysis); *U.S. Currency, $81,000*, 189 F.3d at 35 (same); *United States v. One Parcel of Real Prop. with Bldgs., Appurtenances & Improvements Known as 116 Emerson St., Located in City of Providence, R.I.*, 942 F.2d 74, 78-79 (1st Cir. 1991) (same). On this issue, the Eighth Circuit recently overruled its prior precedent that applied a similar requirement to statutory standing challenges under Supplemental Rule G(5). *See, United States v. $579,475.00 in U.S. Currency*, 917 F.3d 1047, 1049 (2019) (holding that the specificity

requirement is not supported by the plain meaning of Supplemental Rule G(5), and that "[t]o impose a mandate that the claimant must provide more detail or specificity… would go beyond the sparse terms of the rule.") (*citing United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 348-54 (6th Cir. 2017); *United States v. $196,969.00 U.S. Currency*, 719 F.3d 644, 646-47 (7th Cir. 2013)).

Even if it did, after analyzing the Government's verified complaint (as amended), claimant's verified claim, and his answer to the verified complaint, the Court is convinced that it need not trudge through this thicket. Attached to his opposition to the Government's motion to strike, claimant included as an exhibit an amended verified claim. **ECF No. 13-4**. He stated that it was being filed "in the alternative" to the Government's attack on his claim. **ECF No. 13** at 3. The Court thus construes claimant's opposition to the Government's motion to strike as a motion for leave to amend his verified claim pursuant to Fed. R. Civ. P. 15(a)(2).

Claimant's proposed amendment reads: "The property claimed is $30,800.00 in United States currency, this money being mine as substantiated in the administrative claim filed with the DEA, which gave rise to this proceeding. This money is the product of my labor, unemployment benefits provided, and money given to me by my consensual partner." **ECF No. 13-4**. Therefore, petitoner identifies with sufficient specificity the claimant and his interest in the property, thus curing the alleged deficiency pointed out by the Government. *See*, **ECF No. 11** at 3-4.

The Court finds that this amended verified claim would meet the requirements of Rule G(5)(a)(i). In addition, the Court fails to see any reason to deny the amendment under Fed. R. Civ. P. 15. *See*, *Nikitine*, 715 F.3d at 390. The amendment would not be futile, as it would not only meet the statutory requirements but also present a plausible claim for relief. Furthermore, claimant did not significantly delay in proposing the amendment, as it was filed a mere 16 days after the Government moved to strike the verified claim. The information included in the amendment is not new or surprising, either, as it was already known to the Government prior to the filing of the verified complaint and is found in the unsworn declaration of DEA Special Agent Calegari that the Government attached and incorporated into it. Thus, the Court does not see any prejudice accruing to the Government from the amendment. In addition, there is no evidence of bad faith on the part of claimant, as he filed a nonjudicial claim before the U.S. Department of Justice months after the seizure, where he clearly stated that "the money seized at the airport is the product of my common law wife's and my employment and unemployment benefits." **ECF No. 13-1**. There is no indication that claimant purposely omitted the information he now seeks to include. Finally, claimant has proactively prosecuted his case so as to preclude any finding of lack of diligence.[3]

---

[3] Even though the question of constitutional standing is not before the Court, the Court will venture to make two observations. First, that First Circuit precedent is clear in that the constitutional standing inquiry is "not to be conflated with the merits determination that comes later." *Letter from Alexander Hamilton*, 15 F.4th at 521. That is why its requirements are "very forgiving," particularly at "the initial stage of intervention." *One-Sixth Share*, 326 F.3d at 41. Second, that claimant, independent of his proposed amended verified claim, would likely satisfy this inquiry given the facts averred to in the unsworn declaration under penalty of perjury attached to the Government's verified complaint. **ECF No. 1-1**. As claimant points out in his opposition, his claim to an ownership interest is easily discernible from this declaration, which is relied upon in full by the Government. *See*, **ECF No. 13**, at 2. Indeed, a

For these reasons, the Court **GRANTS** claimant leave to amend the verified claim at **ECF No. 6**. Claimant shall have 14 days from the entry of this Opinion & Order to file the proposed amended verified claim at **ECF No. 13-4** as a separate docket entry. Accordingly, the Government's motion to strike the verified claim (**ECF No. 11**) is **DENIED IN PART**.

### B.     Government's Request to Strike Claimant's Counterclaim

Claimant's answer to the Government's verified complaint included a terse two-sentence counterclaim seeking actual and punitive damages from the Government due to the "racial profiling and illegal acts of" the agents that seized his alleged property. **ECF No. 10**, at 3 ¶¶ 19-20. The Government duly attacked the viability of adjudicating this counterclaim in an *in rem* civil forfeiture proceeding. **ECF No. 11**, at 6. It also raised the sovereign immunity as a bar to the counterclaim. *Id.*, at 7-8.

Here, the Court must agree with the Government. The First Circuit's holding in *U.S. v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30 (1st Cir. 1991), controls the outcome of this matter. There, the would-be counterclaim was deemed to be a nullity and disregarded: "Since no civil claim was filed by the government against [claimant]—indeed, rather than being dragooned into the case as a *defendant*, he intervened as a *claimant*—there was no 'claim' to 'counter.' Thus,

---

Fifth Circuit decision (cited by the Government in its motion) provides support for such reliance. *See, United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1113 (5th Cir. 1992) ("Ordinarily… a claimant is required to submit some additional evidence of ownership along with his claim in order to establish standing to contest the forfeiture. In this case, however, [claimant] need not have supplemented his claim with additional evidence, because the government had admitted [claimant's] relationship to the currency in its complaint.").

[the] self-styled counterclaim was **a nullity**, and the court below appropriately ignored it." 927 F.2d at 34 (emphasis added).

Claimant himself offers no rebuttal to any of the Government's attacks on his counterclaim. The Court therefore sees no need to go any further. Claimant's counterclaim against the Government, whatever its merit, cannot be adjudicated in this *in rem* proceeding and will be stricken.

For the above reasons, the Government's motion to strike is **GRANTED IN PART**. The Court will not adjudicate claimant's counterclaim at **ECF No. 10**.

## III. Conclusion

The Government seeks to bar claimant from exercising his right to contest a civil forfeiture for what amounts to an easily remedied deficiency. The Court, following applicable First Circuit precedent as well as the text and spirit of the Supplemental Rules, sees no substantive reason to allow such result. The liberal policy favoring amendments to pleadings applies here, and claimant will be given the opportunity to formally amend his verified claim and attempt to prove his case.

However, claimant's perfunctory attempt to raise a counterclaim here, in an *in rem* civil forfeiture proceeding, is improper. Any such relief, if available at all, must be sought through a different procedural avenue.

Before concluding, a few words on the Government's chosen tactic are in order. At the time it filed its motion, the Government was well aware of what claimant's alleged property

interest in the seized currency was—after all, the verification attached to its complaint made that abundantly clear. Why it chose to pursue a motion to strike a verified claim that, admittedly, is light on facts but solid on substance, is a mystery to this Court—more so when the motion cites not a single First Circuit decision in support.

For the foregoing reasons, the Government's motion to strike the verified claim and counterclaim at **ECF No. 11** is **GRANTED IN PART AND DENIED IN PART**. Accordingly, the Court **GRANTS** claimant leave to amend the verified claim at **ECF No. 6**, and claimant shall have 14 days from the entry of this Opinion & Order to file the proposed amended verified claim at **ECF No. 13-4** as a separate docket entry. Claimant's counterclaim at **ECF No. 13** is hereby **STRICKEN** and will not be considered by this Court.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 29th day of March, 2023.

                **S/AIDA M. DELGADO-COLÓN**
                **United States District Judge**